## STATE v. GURR.

No. 2151.   Decided December 27, 1911 (120 Pac. 209, 39 L. R. A. N. S. 320).

LARCENY—RECENT POSSESSION OF STOLEN PROPERTY—REASONABLE EX-PLANATION—QUESTION FOR JURY. In a prosecution for cattle theft, defendant claimed to have purchased them from a stranger and produced a bill of sale for the cattle duly witnessed. The witnesses testified to the execution of the bill, and also corroborated defendant with reference to other statements. *Held,* that the fact that such reasonable explanation of defendant's possession of the cattle was not denied, and the witnesses were not impeached, did not entirely overcome the *prima facie* evidence of guilt established by recent possession, as provided by Comp. Laws 1907, sec. 4355, but required the submission of the question to the jury.

APPEAL from District Court, Fourth District; *Hon. J. E. Booth,* Judge.

Joseph Gurr was convicted of cattle stealing. He appeals.

AFFIRMED.

*J. W. N. Whitecotton* for appellant.

*A. R. Barnes,* Attorney-General, and *E. V. Higgins,* and *Geo. C. Buckle,* Assistant Attorneys-General, for the State.

FRICK, C. J.

The appellant was charged with the crime of grand larceny committed by stealing fourteen head of cattle, the property of one S. W. Teague. Appellant was tried, convicted, and sentenced to a term of imprisonment in the Utah state prison, and appeals.

The only errors assigned are that the evidence is insufficient to sustain the verdict and judgment, and that the court erred in not granting a new trial.

There is no dispute with regard to the ownership of the cattle, nor that they were stolen. There is no direct evidence that appellant stole the cattle in question, but there is uncontradicted evidence to the effect that a short time after the alleged bill of sale hereinafter referred to is dated he was seen at Horseshoe Bend, on Green River, Utah, where Teague, the owner of the cattle in question, kept or ranged his cattle, and at that time appellant had in his possession some of Teague's cattle. Appellant explains this by the statement that, after he purchased the cattle in question, he drove them to Green River, which is some distance from Vernal, where he claimed to purchase the cattle from Pierce for the purpose of grazing them. There is also undisputed evidence that quite a number of the stolen cattle, if not all, were branded with Teague's brand, with which appellant was acquainted. Appellant was thus found in possession of some of Teague's cattle a short time after they had been stolen or taken from the range. At the time it was discovered that appellant had possession of the stolen cattle, he had already disposed of some of them to a butcher, and the brand on the hides was identified as Teague's brand. Appellant explained his possession, stating that he had purchased the cattle in question from one W. F. Pierce, who was a stranger whom neither appellant nor any one else knew, and who apparently disappeared immediately after he had sold the cattle to appellant. As evidence of such sale, appellant produced and introduced in evidence the following bill of sale:

"Vernal, Utah, August 18, 1909.

"For value received this certifies that I this day have sold to J. E. Gurr, fourteen head of cattle branded A. N. on left side, three calves branded 'W' on left side for the consideration of two hundred and twenty-five dollars ($225.)

F. W. Pierce.

"Witness:

"J. H. Cook.

           his

"M.   X   Mott."

     mark

Both Cook and Mott, witnesses to the bill of sale, testified on behalf of appellant. They said that they were present when the appellant purchased the cattle from Pierce; that he was a stranger to them, and that they had not seen him before nor saw him after the alleged sale of the cattle to appellant; that they saw appellant pay Pierce some money at the time the bill of sale was executed and the cattle delivered, but could not say how much. They also corroborated appellant in some other statements made by him. Appellant testified that he paid Pierce at the time of the delivery of the cattle the sum of fifty dollars, and thereafter, on the same day, paid him the additional $175 which he obtained from his home at Vernal. The cattle were alleged to have been purchased about four miles south of Vernal. There are other facts and circumstances, but, in view that we cannot weigh or determine the probative force of the evidence, we shall refrain from setting forth more of it than is necessary to a full understanding of the points decided.

Counsel for appellant contend that, in view that in this case, there was no direct evidence that appellant stole the cattle; that the only evidence relied on by the state is that the cattle were stolen, and that appellant had possession and had exercised dominion over them shortly after they were stolen; that appellant had made a reasonable explanation of his possession of the cattle which was corroborated by witnesses whose testimony was not denied or disputed and the witnesses not impeached by the state; that, therefore,

there was no legal evidence of the guilt of appellant, and hence the verdict must be declared without support in the evidence as matter of law.

It must be conceded that the cases of *State v. Marquardson,* 7 Idaho, 352, 62 Pac. 1034, and *State v. Seymour,* 7 Idaho, 257, 61 Pac. 1033, support counsel's contentions. It is there held that, where the only evidence of guilt is that property recently stolen is found in the possession of a person and such person makes a reasonable explanation of his possession which is corroborated and is not disputed by the state, the jury may not ignore the explanation, and a verdict of guilty will not be permitted to stand. It is somewhat singular, in view that the Seymour Case, decided by the same court that decided the Marquardson Case, and only about six months before the latter case was decided, that no mention of the former case is made in the latter. Nor is there any case cited in either of the Idaho cases in support of the doctrine there laid down. In addition to those two cases, appellant's counsel also cite the case of *McMahon v. People,* 120 Ill. 581, 11 N. E. 883, *State v. McKinney,* 76 Kan. 419, 91 Pac. 1068, and *People v. Mock Yick Gar,* 111 Pac. 1029. The first two cases involved the question of the sufficiency of the evidence to convict upon a charge of larceny where the accused was found in possession of recently stolen property. The facts in those cases, however, are distinguishable from those of the case at bar. The last case cited above is from the California Court of Appeals, but is not in point here.

The conviction in this case is based upon Comp. Laws 1907, sec. 4355, which reads as follows:

"Larceny is the felonious stealing, taking, carrying, leading, or driving away the personal property of another. Possession of property recently stolen, when the party in possession fails to make a satisfactory explanation, shall be deemed *prima facie* evidence of guilt." Pursuant to such section the court charged the jury as follows:

"In a criminal case the burden is upon the state to prove beyond a reasonable doubt the guilt of the defendant and

that where property alleged to have been stolen is found in
the possession of the defendant, and the defendant makes a
reasonable explanation of such possession, which is not chal-
lenged by the state, then the defendant is entitled to an ac-
quittal, if the jury believes the explanation to be true." No ex-
ception was taken to this charge, and no complaint is made
with regard thereto, except that the jury must have ignored
or disregarded it or they would have acquitted the appellant.
While the charge is perhaps open to criticism in some re-
spects, and for that reason we do not approve it, yet, in
view that no exception was taken, we need not now pause to
consider it further.   As already indicated, if the cases from
Idaho are to be strictly followed, then, perhaps, the expla-
nation of appellant's possession, whether true or false, in view
that it was not denied by the state, and neither he nor his
witnesses impeached, should be held sufficient to entitled him
to an acquittal.   But we think that the weight of authority
and the better reason are opposed to the doctrine laid down
in the Idaho cases, and hence are adverse to counsel's con-
tensions.   In *State v. Brown,* 25 Iowa, 566, Mr. Chief Jus-
tice Dillon, in discussing the probative force of an explana-
tion made by an accused in whose possession recently stolen
property was found, says:

"But, where the claim is that he bought the property of a
stranger, it is not necessarily such an explanation as obliges the
state specifically to disprove it."

In *State v. Marshall,* 105 Iowa, 38, 74 N. W. 763, the
rule in the headnote, which reflects the decision, is stated
thus:

"The truthfulness of an explanation of the possession of stolen
goods, although not contradicted, must be determined by the jury."

To the same effect are *State v. King,* 122 Iowa, 1, 96 N. W.
712, and *State v. Mandich,* 24 Nev. 336, 54 Pac. 516.   In
25 Cyc. 138, the rule generally prevailing is stated in the
following language:

"Whether the explanation is reasonable is for the jury. And a reasonable explanation will not necessarily lead to an acquittal. Even if a reasonable account is given, the question of guilt is still entirely for the jury, and defendant is not entitled to an instruction that the prosecution must show the account to be false."

The authorities in support of the foregoing text are referred to in the footnotes.

If counsel's contentions are correct, then the whole matter hinges on whether the explanation which the accused makes concerning his possession is in the judgment of this court reasonable or not. If the jury should find it unreasonable, but we should deem it reasonable, we would be compelled to reverse the findings of the jury. This would require us to pass upon the weight to be given to the testimony of the accused and his witnesses respecting the explanation, although the jury had seen and heard them testify, which we had not. Such a rule would, in effect, require the jury to believe or accept every reasonable explanation made by the witnesses, although in the judgment of the jury there were good reasons for disbelieving the statements made by them respecting the possession of the property. Counsel, however, contend that, if a reasonable explanation is made and we refuse to interfere, the jury can arbitrarily disregard every explanation, and thus convict innocent men. While it may be possible that a jury may err with regard to both the reasonableness and truthfulness of an explanation, yet such an error is possible with regard to any inculpatory fact which the jury must find from the evidence in order to convict the accused. The question, so far as this court is concerned, is not whether the jury ought to have found the accused guilty under the evidence, but the question is, Is there any substantial evidence to support the findings of the jury?

Since writing the foregoing we have had occasion to pass upon the meaning and effect that should be given section 4355, *supra*, in two well-considered opinions written by Mr. Justice Straup, namely, in *State v. Potello*, 40 Utah, 56, 119 Pac. 1023, and in *State v. Converse*, 40 Utah, 72, 119 Pac. 1030. We there held that the question of whether

the explanation respecting the possession of property recently stolen is reasonable or satisfactory is ordinarily a question for the jury, the same as is any other question of fact. If the evidence is such that all reasonable minds should arrive at the conclusion that the explanation is reasonable and satisfactory, then, and then only, does it become a question of law to be determined by the court. If, however, after a full, fair, and impartial consideration of all of the evidence relating to the explanation, reasonable minds may differ and may thus arrive at different conclusions with regard to whether it is reasonable and satisfactory or not, the finding of the jury must control. In this case there are abundant circumstances relating to the possession of the cattle and appellant's explanation of his possession from which different minds may draw different inferences or conclusions. Moreover, the veracity of appellant and his witnesses was a question for the jury. True, as is said by Mr. Justice Straup in the cases before referred to, a jury may not without cause ignore or disregard competent and material evidence. The jury may, however, disregard evidence given or statements made by the accused or his witnesses if there is a good reason for doing so, and, in the event the jury have for good cause refused to believe a witness or witnesses, we cannot control their judgment.

Without going into further detail, it must suffice to say that, after a careful consideration of all the facts and circumstances in evidence in this case, we are of the opinion that, under the rule laid down in both of the cases to which we have referred, the finding of the jury that the possession of the cattle in question by appellant was felonious, and that his explanation of such possession was not satisfactory, is supported by the evidence. If we should hold otherwise in this case, cattle stealing from our vast ranges would become a comparatively safe rather than a hazardous undertaking, unless some one actually knew of or saw the accused drive them from the range.

The judgment is affirmed.

McCARTY and STRAUP, JJ., concur.