## STATE v. HALL

No. 6588. Decided June 18, 1943. (139 P. 2d, 228.)

*Ray S. McCarty,* of Salt Lake City, for appellant.

*Grover A. Giles,* Atty Gen., and *Herbert F. Smart,* Deputy Atty. Gen., for respondent.

WOLFE, Chief Justice.

The defendant, Ray Nuttal Hall, was convicted of the crime of grand larceny. On this appeal he urges that the evidence is insufficient to sustain the conviction.

The information charged that the defendant stole from Strevell-Paterson Hardware Company one case (500) H-10 Champion Spark Plugs sometime between May 23rd and May 25th, 1942. The facts adduced show that about six weeks prior to the weekend of May 23rd, the date of the larceny charge in the information, another shipment of three cases of Champion spark plugs arrived in Salt Lake City for Strevell-Paterson. This shipment, which consisted of one case (500) Commercial 62's and two cases of 1,000 H-10's, disappeared after it arrived at the docks of the Stordor Forwarding Company in Salt Lake City. This latter company handled l.c.l. shipments for various manufacturers including the Champion Spark Plug Company, and received this shipment for the purpose of delivering it to Strevell-Paterson. When these three cases disappeared, Strevell-Patterson ordered two cases of H-10's and one of Commercial 62's to replace them.

On Friday, May 22nd, these three replacement cartons arrived in Salt Lake City and were also received at the docks

of the Stordor Forwarding Company. No attempt was made to deliver the plugs to Strevell-Paterson until Monday, May 25th. On Monday one of the cases of H-10 spark plugs was missing. It is this latter missing case of plugs which the State charges that the defendant stole and upon which it bases this prosecution.

There is no evidence showing that anyone saw the defendant or anyone else take the spark plugs from the docks. The State, therefore, relied entirely on circumstantial evidence to prove all the elements of the crime. The defendant first asserts that the State failed to prove the corpus delicti. This contention is untenable. The evidence shows that these plugs were received on Friday, that they were handled in the customary manner and that one of the three cases was missing on Monday. Some six weeks earlier another shipment consisting of three cases of spark plugs also disappeared from the same docks under similar circumstances. The fact that two shipments of plugs disappeared within a six-week period tends to negative any inference that they may have been mislaid and to give weight to the theory that both shipments were stolen. The fact that on May 22nd the three cases of plugs were unloaded together on the docks and that only one was missing, together with the fact that the missing case could not be found after a search, also supports the theory that the missing case was stolen. These facts alone might be sufficient to prove the larceny by someone, but we need not rely on them alone. In a prosecution for larceny, it is not essential that the corpus delicti be established by evidence independent of the evidence which is adduced to prove that the defendant was the perpetrator of the crime. The same evidence may be used to prove both. *George* v. *United States,* 1 Okl. Cr. 307, 97 P. 1052, 100 P. 46; *State* v. *Marcy,* 189 Wash. 620, 66 P. 2d 846. Therefore, in addition to the above stated evidence we may consider the fact that at the time these plugs disappeared, it was very difficult for even a licensed wholesaler to purchase such plugs in lots of 500, and

Strevell-Paterson had not had enough plugs for over a year to sell case lots of these plugs to the various dealers. Yet within two days after this last shipment disappeared from the docks, one Sanford purchased 500 of such plugs at a price far below the market price—Sanford paid $45 for the 500 plugs, the price to a wholesaler was $165, to a dealer, $265, and to the consumer, $325. Sanford stated that he purchased the plugs from the defendant; this the defendant denied. The defendant had access to the docks at the time when both shipments of these plugs disappeared. These facts would certainly warrant a finding by the jury that these plugs purchased by Sanford were "hot." The difficulty of obtaining case lots of such plugs gives them a character of uniqueness and supports the theory that these "hot" plugs were part of those missing from the docks and that they were missing from the docks because they had been stolen. We believe that the evidence is sufficient to warrant a finding by the jury that the plugs which disappeared on May 23rd as well as those which disappeared some six weeks earlier were both stolen. However, connecting the defendant with the May 23rd theft presents a different problem.

To connect the defendant with this theft the State relied primarily on the presumption of guilt which by virtue of section 103-36-1, U. C. A. 1943, may be drawn from proof of possession of recently stolen property without satisfactory explanation of such possession. This section provides:

"Possession of property recently stolen, when the person in possession fails to make a satisfactory explanation, shall be deemed prima facie evidence of guilt."

The defendant contends (1) that before the jury should be permitted to draw such an inference of guilt, the State must prove beyond a reasonable doubt that the plugs which Sanford allegedly purchased from the defendant were the identical plugs stolen on May 23rd; and (2) that proof of such identity must be made by direct evidence, for, he ar-

gues, to permit an inference of guilt to be drawn from facts established by circumstantial evidence would violate the rule which prohibits the basing of an inference on another inference.

Under the authorities, it is clear that the State must definitely identify the goods found in the defendant's possession as the goods which were charged to have been stolen before the jury may draw an inference of guilt based upon the proof of possession by the defendant of such █ goods. *Nelson* v. *State*, 29 Ala. App. 121, 192 So. 594; *State* v. *Williams*, 102 Or. 305, 202 P. 428; *State* v. *Matticker*, Mo. Sup., 22 S. W. 2d 647; *Moore* v. *Commonwealth*, 229 Ky. 765, 17 S. W. 2d 1021; *Carter* v. *State*, 57 Ga. App. 180, 194 S. E. 842.

However, the defendant's contention that the State, if it chooses to rely on the inference of guilt under section 103-36-1, must prove the identity of the goods by direct evidence is untenable. See Underhill, Criminal Evidence, 4th Ed., § 510. In *Carter* v. *State*, supra, the court ques- █ tioned the soundness of the rule that an inference cannot be based upon another inference and stated:

"Conceding it to be so [that the rule is of doubtful validity], yet it is nevertheless true that where, in a criminal case, a certain fact, such as the recent possession of stolen goods in a prosecution for larceny, is relied on, and is not directly proved, but is to be inferred from circumstances, those circumstances should be such as to exclude every reasonable inference except that the defendant was actually in the possession of the goods alleged in the indictment to have been stolen."

Further, the rule that an inference cannot be based upon an inference has frequently been repudiated. See *E. K. Wood Lumber Co.* v. *Andersen*, 9 Cir., 81 F. 2d 161; *New York Life Ins. Co.* v. *McNeeley*, 52 Ariz. 181, 79 P. 2d 948; *Hinshaw* v. *State*, 147 Ind. 334, 47 N. E. 157, 158; *Welsch* v. *Charles Frusch L. & P. Co.*, 197 Iowa 1012, 193 N. W. 427; *Masonite Corp.* v. *Hill*, 170 Miss. 158, 154 So. 295, 95 A. L. R. 157; *Hepp* v. *Quickel A. & S. Co.*, 37 N. M. 525, 25 P. 2d 197;

*L'Esperance* v. *Sherburne*, 85 N. H. 103, 115, 155 A. 203; *State* v. *Fiore*, 85 N. J. L. 311, 88 A. 1039; *Gypsy Oil Co.* v. *Ginn*, 152 Okl. 30, 3 P. 2d 714; *Neely* v. *Provident Life & Accident Co.*, 322 Pa. 417, 185 A. 784. See also Wigmore on Evidence, Vol. 1, § 41, where in criticizing the rule it is stated:

"It was once suggested that 'an inference upon an inference' will not be permitted, i.e., that a fact desired to be used circumstantially must itself be established by testimonial evidence; and this suggestion has been repeated by several Courts, and sometimes actually enforced. There is no such orthodox rule; nor can be.

"* * * The judicial utterances that sanction the fallacious and impractical limitation, originally put forward without authority, must be taken as valid only for the particular evidentiary facts therein ruled upon."

The case of *State* v. *Bruno Hauptmann*, 115 N. J. L. 412, 180 A. 809, is an apt example of a conviction based upon the drawing of successive inferences leading to the ultimate conclusion of guilt.

Excellent discussions of the rule can be found in *Neeley* v. *Provident Life & Accident Ins. Co.*, supra; and in *New York Life Ins. Co.* v. *McNeeley*, supra. In the former opinion it is stated [322 Pa. 417, 185 A. 789]:

"When jurors in their deliberations arrive by a process of reasoning at an acceptable inference of fact, they have a right to add such fact to any previous facts found by them and proceed by ratiocination from such fact or facts to additional inferences of fact and then proceed still further by like process until they arrive at the ultimate conclusion on the issue trying."

In the New York Life Ins. Co. v. McNeeley case [Ariz. 181, 79 P. 2d 954] the court stated:

"But when an inference of the probability of the ultimate fact must be drawn from facts whose existence is itself based only on an inference or a chain of inferences, it will be found that the courts have, with very few exceptions, held in substance, although usually not in terms, that all prior links in the chain of inferences must be shown with the same certainty as is required in criminal cases, in order to support a final inference of the probability of the ultimate fact in

issue. We think that this is the true meaning of the 'inference upon inference' rule in civil cases as borne out by a careful analysis of the majority of cases in which it has been applied, and that the courts do not mean that under no circumstances may an inference be drawn from an inference, but rather that the prior inferences, must be established to the exclusion of any other reasonable theory rather than merely by a probability, in order that the last inference of the probability of the ultimate fact may be based thereon. This rule is not based on an application of the exact rules of logic, but upon the pragmatic principle that a certain quantum of proof is arbitrarily required when the courts are asked to take away life, liberty or property."

We therefore conclude that the State must prove beyond a reasonable doubt that the plugs which the defendant sold to Sanford were the plugs stolen from the docks on May 23rd. Proof in the alternative that they were either the ones stolen on May 23rd or part of the shipment which was stolen some six weeks earlier, will not suffice. But this proof of identity may be by either direct or circumstantial evidence.

In view of these propositions we must conclude as a matter of law that the State failed to prove that these were the plugs taken on the weekend of May 23rd. The testimony relating to the difficulty in getting case lots of these plugs and the defendant's admitted access to both of the Strevell-Paterson shipments is probably sufficient to negative the inference that they came from a source entirely unrelated to either of the Strevell-Paterson shipments. But there is absolutely no evidence which tends to show that these plugs were the ones taken on the weekend of May 23rd rather than part of the shipment taken at the earlier date.

The conclusion that the State failed as a matter of law to identify the plugs disposes of the case for without such identification the jury could not draw the inference of guilt under section 103-36-1. Without this inference of guilt there is not sufficient evidence to support the conviction. However, we consider the other contentions of the defendant by way of guidance to the lower court on retrial if retrial there be. This is our duty under Section 104-41-23, U. C. A. 1943. These other contentions are: (1)

that in the absence of positive identification the spark plugs recovered from Sanford should not have been admitted in evidence; and (2) that the court erred in instructing the jury on the inference of guilt which it could draw from the proven facts of the larceny, possession by the defendant of the recently stolen property, and the failure of the defendant to make a satisfactory explanation.

There is no merit in the first contention. The State need not necessarily rely in larceny cases on the inference that may be drawn from the proven fact that the defendant had possession of recently stolen property. A defendant may be connected with a proven larceny by circumstantial evidence even though the identical goods are never found in the defendant's possession or never found at all. The fact that in this case the defendant had possession of a large quantity of the same or similar plugs so soon after the date of the two thefts has considerable probative value. Especially is this true when considered with the other facts such as the sale at the ridiculously low price, the fact that case lots were very difficult to get, etc. As stated in Wharton's Criminal Evidence, Vol. 2, p. 1293,

"If a question of fact as to the connection of the articles sought to be admitted with the defendant or the crime is raised, the evidence should be admitted for the determination of the jury. The lack of positive identification in such a case affects the weight of the article or substance as evidence, rather than its admissibility."

In the instruction, which is challenged by the second of these contentions, the jury was instructed as follows:

"You are instructed that the law provides that possession of property recently stolen, when the party in possession fails to make a satisfactory explanation, shall be deemed prima facie evidence of guilt. That is, it is declared by statute that from the proven facts of the larceny, recent possession in the defendant, and his failure to satisfactorily explain his possession, an inference or presumption arises, unless rebutted by other evidence or discredited by the circumstances, sufficient to make a prima facie case against the defendant. * * *"

Since we have held that as a matter of law the evidence was insufficient to identify the plugs as those stolen on the weekend of May 23rd, we must conclude that it was prejudicial error to give this instruction. The jury should not have been instructed that they could draw an inference from certain "proven facts" when, as a matter of law, there was not sufficient evidence, either direct or circumstantial, to establish the facts upon which the inference of guilt was to have been based. The case would therefore have to be reversed on this ground also. It may also be well to note that even if the State is able, in event of retrial, to identify the plugs as those stolen on May 23, the court should not instruct the jury in the language quoted above. The jury is not concerned with a determination of when the State has made out a prima facie case; its duty is to determine the issue of ultimate guilt. *State* v. *Brooks*, 101 Utah 484, 126 P. 2d 1044; *State* v. *Barretta*, 47 Utah 479, 155 P. 343. An instruction such as this one which concerns the evidence necessary to make out a prima facie case for the State would only be confusing and might lead the jury to conclude that the State had met its burden of proving ultimate guilt beyond a reasonable doubt by making out a prima facie case. However, in connection with this instruction the court in this case instructed the jury that the State still must prove guilt beyond a reasonable doubt. Thus the instruction as given, though improper, would not have been prejudicial error if the goods had been identified as those stolen on the weekend of May 23rd. *State* v. *Donovan*, 77 Utah 343, 294 P. 1108. But since the term "prima facie" is used in the statute in the sense of presumptive evidence, *State* v. *Potello*, 40 Utah 56, 119 P. 1023, it would be more proper to instruct the jury in substance that if it found from the evidence beyond a reasonable doubt that someone had committed the lerceny as charged, that the defendant was found in possession of the recently stolen goods and that it further found that he failed to give a satisfactory explanation, there would arise

an inference that the defendant committed the larceny and that this inference might, with all other circumstances, be considered in determining whether or not the jury was convinced beyond a reasonable doubt of the defendant's guilt. However, in the absence of more evidence to identify the plugs it was error to instruct the jury regarding this inference of guilt. In other words the State must in some way show that these plugs were not those stolen some six weeks prior to May 23rd. Until this is done, a conviction for the May 23rd theft cannot be based upon the presumption which may be drawn from the proven fact of the possession of recently stolen property for the plugs have not been sufficiently identified.

Reversed and remanded for a new trial.

LARSON, McDONOUGH, and WADE, JJ., concur.

MOFFAT, Justice.

I concur in the order reversing the judgment of conviction. I am further of the opinion the action should be dismissed. Under the analysis of the principal opinion there was not sufficient evidence to take the case to the jury.